**STATE OF HAWAII**, Plaintiff–Appellee, v. **SHAYNE C. PALPALLATOC**, Defendant–Appellant

NO. 13909

(CASE NO. TRP27 OF 4/26/89)

FEBRUARY 16, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED
JUSTICE NAKAMURA, ASSIGNED BY
REASON OF VACANCY

OPINION OF THE COURT BY HAYASHI, J.

Defendant–Appellant Shayne C. Palpallatoc (Defendant) appeals from his conviction for driving without no–fault insurance (HRS § 431:10C–104). After a bench trial, the court found Defendant guilty, suspended his driver's license for a period of six months and fined him four hundred dollars. We affirm.

This case proceeded to trial on February 8, 1989, based on the following stipulated facts:

1. Defendant was operating a motor vehicle bearing license number BEJ 481, which was owned by his

brother, Scot[t] Palpall[a]toc. It was involved in an automobile accident on October 21, 1988.

2. Scott Palpallatoc's vehicle was not insured by no–fault insurance on the date of said accident.

3. Defendant has permission from Scot[t] Palpallatoc to operate said motor vehicle on the date in question.

4. Defendant had no knowledge that said vehicle was not covered by no–fault insurance.

5. Defendant was cited for not having no–fault insurance on October 21, 1988 and there was probable cause to stop the defendant.

Transcript of April 26, 1989 at 2–3. The issue before the court was whether a person who borrows another person's vehicle without knowing that the vehicle is uninsured establishes the good–faith defense of lack of knowledge under the no–fault statute, HRS § 431:10C–117. At trial on February 8, 1989, the lower court asked the parties to submit memoranda in support of their respective positions and continued trial until April 26, 1989.

Defense counsel submitted a Motion for Judgment of Acquittal on April 5, 1989, and an identical Supplemental Motion for Judgment of Acquittal on April 12, 1989. The State failed to submit a memorandum.

At trial on April 26, 1989, the lower court ruled that "the word[s] 'good–faith defense' at its minimum requirement, means an inquiry as to whether or not the registered owner has no–fault insurance or not. Absent that inquiry, good–faith has not been shown." Transcript of April 26, 1989 at 8. The lower court, however, rejected the requirement of an affirmative act after the inquiry, such as looking in the glove compartment. The lower court found from the stipulated facts that no inquiry was made by the Defendant, and therefore found that the good–faith defense had not been established as required by statute. Accordingly, the court denied Defendant's Motion for Judgment of Acquittal and found Defendant guilty as charged.

This timely appeal followed.

## I.

Defendant contends that a plain reading of HRS § 431:10C–117 clearly provides a good faith defense in a situation where a party lacks knowledge that a vehicle is uninsured. Defendant asserts that this interpretation of the statute is consistent with the legislative history of the statute and the fact that the legislature amended the statute to specifically provide for such a defense. We disagree.

In *State v. Lesher*, 66 Haw. 534, 669 P.2d 146 (1983),[1] we held that although it did not appear that the legislature intended to impose absolute liability for operating an uninsured vehicle, the statutory scheme and the requisite state of mind (at a minimum recklessness) make it "incumbent upon the borrower of a vehicle to ascertain whether or not there is a current no–fault insurance card in the vehicle." 66 Haw. at 537, 669 P.2d at 148.

In 1988, the legislature amended HRS § 294–39, renumbered HRS § 431:10C–117, to allow for a good faith defense. That statute reads in pertinent part as follows:

> [P]rovided further that any person cited under this section shall have an opportunity to present a good faith defense, including but not limited to lack of knowledge or proof of insurance.

HRS § 431:10C–117(a)(2) (Supp. 1989).

Where no ambiguity exists in the language of the statute, the statute must be given effect according to its plain and obvious meaning. *State v. Palama*, 62 Haw. 159, 612 P.2d 1168 (1980). "Where statutory language is ambiguous, yet capable of being

---

[1] This case interpreted HRS § 294–8 and § 294–8.5(a) which were subsequently amended and renumbered § 431:10C–104 and § 431:10C–107, respectively, the same statutes involved in the case at bar.

fairly and reasonably construed, the purpose and objective which moved the legislature to enact it may be determinative of its interpretation." *State v. Ogata*, 58 Haw. 514, 518, 572 P.2d 1222, 1225 (1977) (citations omitted).

In amending the statute to provide for an assertion of a good faith defense, the legislature clearly expressed its intent that absolute liability will not be imposed for operating an uninsured vehicle, and that owners and drivers may avail themselves of certain good faith defenses. *Cf. State v. Lesher*, 66 Haw. 534, 669 P.2d 146 (1983). The plain language of the statute, however, does not make clear what constitutes the good faith defense of lack of knowledge. Given this ambiguity we must interpret the language of the statute consistent with the purpose and objective of the entire statute.

The statute's legislative history provides no guidance.[2] The purpose of the entire act, however, is clear. That purpose is to have all vehicles on the road (excluding federally–owned vehicles) insured by no–fault insurance. HRS § 431:10C–102 reads in pertinent part as follows:

> **Purpose.**
>
> . . . .
>
> (b) To effectuate this system of motor vehicle insurance and to encourage participation by all drivers in the motor vehicle insurance system[.]

In justifying the imposition of harsher penalties for driving without insurance, the legislature stated that "driving without insurance is a serious offense and that the prospect of automatic license suspen-

---

[2] The legislative history reads in pertinent part as follows:

> The purpose of this bill was to provide that in addition to a fine, the owner and the driver of an illegally operated uninsured motor vehicle shall have their driver's licenses suspended for one year. However, lack of knowledge or proof of insurance would be considered good faith defenses.

Sen. Conf. Comm. Rep. No. 188, in 1988 Senate Journal, at 658.

sion, in addition to a stiff fine, should deter this behavior . . . [and] that this punishment is needed to protect Hawaii's citizens and should convince many drivers that it is better to be insured than to risk the consequences of driving illegally." Sen. Conf. Comm. Rep. No. 188, in 1988 Senate Journal, at 658–59.

As we stated in *Lesher*, allowing drivers to escape penal responsibility for operating uninsured motor vehicles by failing to inquire as to whether or not that vehicle is insured would frustrate the purpose of the statute, since the objective of the no–fault system is to have all vehicles being operated on the highways insured.

To give effect to the overall statutory scheme, therefore, we hold that in order to satisfy the good faith defense of lack of knowledge, the borrower of a vehicle must at least inquire of the owner whether or not the vehicle is insured.[3]

Here, Defendant by merely stating he had no knowledge that the vehicle was not covered by no–fault insurance, we feel was not sufficient to satisfy the requirement necessary to assert the good faith defense of lack of knowledge.

Affirmed.

*Richard W. Pollack*, Public Defender (*Travis J. L. Stephens, Jr.*, Deputy Public Defender, with him on the opening brief) for Defendant–Appellant.

*James H. S. Choi*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.

---

[3] Under *Lesher*, the borrower may still negate the State's showing of recklessness by ascertaining that there is a current no–fault insurance card in the vehicle.