838 So.2d 189 (2003)
STATE of Louisiana, Appellee,
v.
Kevin E. EPPINETTE, Appellant.
No. 36,825-KA.
Court of Appeal of Louisiana, Second Circuit.
February 11, 2003.
*190 Charles Blaylock, Monroe, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Penny Douciere, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and DREW, JJ.
BROWN, C.J.
Defendant, Kevin Eppinette, pled guilty to driving while intoxicated, third offense, a violation of La.R.S. 14:98, with an agreed upon sentence; however, he reserved his right to appeal the denial of his pretrial motion to suppress in accord with State v. Crosby, 338 So.2d 584 (La.1976). For the reasons set forth below, defendant's conviction is affirmed, but we are constrained to vacate the sentence and remand to the trial court for resentencing in accordance with the amendment to La.R.S. 14:98(D). See State v. Mayeux, 01-3195 (La.06/21/02), 820 So.2d 526.

Factual Background
On May 28, 2001, agents with the Louisiana Department of Wildlife and Fisheries stopped defendant while he was operating a jet ski on Woolen Lake in Richland Parish. He was stopped for a routine boating safety check pursuant to La.R.S. 34:851.29. Because of his appearance and smell, Eppinette was given and failed a field sobriety test. He was arrested and later registered .118 on a breath Intoxilyzer. Having two previous D.W.I. convictions, Eppinette was charged with driving while intoxicated, third offense.
Defendant filed a motion to suppress the breath test results, urging that the initial stop was without probable cause. On the date of the hearing, defendant's attorney orally amended the motion to include a request to quash the bill of information because it charged Eppinette under the general driving while intoxicated statute under which third offense D.W.I. is a felony, rather than under the boating safety statutes under which multiple D.W.I. offenses are misdemeanors. The trial court denied the motion.
On May 8, 2002, defendant, with a Crosby reservation, pled guilty to DWI third offense and was sentenced to five years at hard labor with four and one-half years suspended, active probation for five years, completion of alcohol abuse counseling and treatment, abstinence from alcohol and controlled dangerous substances, and random drug screens. A $2,000 fine was also imposed, together with costs to defray the expenses of drug screens and probation. This appeal ensued.

Discussion
Defendant objects to what he describes as a discretionary, suspiciousless stop and seizure. Alternatively, he asserts that because the stop was authorized by the boating safety act, he must also be charged under that act.

*191 Validity of Stop and Seizure

The Fourth Amendment to the United States Constitution protects the right to be secure "against unreasonable searches and seizures." Ordinarily, reasonableness focuses on an individualized suspicion of wrongdoing; however, the supreme court has recognized limited circumstances where the usual rule does not apply. City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).
In certain instances, the government's need to discover latent or hidden conditions, or to prevent their development, is sufficiently compelling to justify an intrusion without any measure of individualized suspicion. The court in: Vernonia School District 47J v. Acton, 515 U.S. 646, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995) upheld random, suspicionless drug testing of school athletes; in Board of Education of Independent School District No. 92 of Pottawatomie County v. Earls, 536 U.S. 822, 122 S.Ct. 2559, 153 L.Ed.2d 735 (2002), the court expanded Vernonia to allow random, suspicionless drug testing of middle and high school students participating in any extracurricular activity including choir and the Academic Team.
More pertinent to the present case, brief, standardized, discretionless, checkpoints of automobiles have been upheld as serving significant interests in safety. Specifically, the following were found valid: United States v. Martinez-Fuerte, 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), a highway checkpoint for detecting illegal aliens; Michigan Dept. of State Police v. Sitz, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), use of highway sobriety checkpoint; Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), although the court invalidated this particular stop because it utilized "standardless and unconstrained discretion," the court acknowledged the state's interest in checking drivers' licenses and registration.
Wildlife and Fisheries agents have the specific right to make investigatory stops of watercraft under La.R.S. 34:851.29, which provides:
It shall be the duty and responsibility of every wildlife agent and peace officer of this state and its subdivisions to enforce the provisions of this Part, and in the exercise thereof, they are hereby authorized to stop and board any vessel[1]for the purpose of addressing inquiries to those on board, requiring appropriate proof of identification therefrom, examining the certificate of numbers issued under this Part or in the absence of such certificate requiring appropriate proof of identification of the owner or operator of the vessel, and in addition, examining such vessel for compliance with this Part. Officers so boarding any vessel shall first identify themselves and such officer in the performance of his duties shall be without liability for trespass. (Emphasis added).
This statute is not designed to detect general criminal activity, which is prohibited under recent Supreme Court interpretations, but rather is for the specific purpose of insuring safety on Louisiana waterways. Both federal and state jurisprudence has made it clear that when an identifiable public safety reason exists, states can make laws that allow for suspicionless stops. Safety on the water is a compelling reason for Louisiana to authorize wildlife and fisheries agents to stop *192 and inspect watercraft. These stops are permitted any time a person is on the water. Lakes and waterways are different than 60-foot highway right-of-ways and do not easily lend themselves to stationary checkpoints. In this case, the only evidence of the circumstances of this stop was the stipulation that it was a routine boating safety check pursuant to La.R.S. 34:851.29. Thus, we find no "unconstrained discretion."
Since a suspicionless stop under the circumstances presented in this case is allowable, any information learned during the stop can be acted upon by the officers. Once the wildlife agents lawfully stopped defendant's jet ski to perform a safety check, it became apparent to them that he might be intoxicated. This observation gave them probable cause to investigate further. See State v. Benoit, 01-2712 (La.05/14/02), 817 So.2d 11.
We find that the initial stop was valid and the resulting investigation and search were lawful. Therefore, any evidence obtained could be used.

Applicable Statute
Defendant's argument that the evidence can be used only to convict him under La.R.S. 34:851.8 is meritless. Both La.R.S. 34:851.8 and La.R.S. 14:98 prohibit the operation of watercraft while intoxicated. If the legislature had intended to limit operation of a watercraft while intoxicated to the provisions in the safe boating statutes, it would not have included watercraft in La.R.S. 14:98.
Defendant argues that because the Wildlife and Fisheries agents used the authorization of the boating safety act to stop and inspect defendant's jet ski then D.W.I. charges must be brought under the same statute. This argument is without merit.
The framework of our law anticipates situations in which a suspect could be charged under more than one statute; the problem is addressed by La.R.S. 14:4, which reads:
Prosecution may proceed under either provision, in the discretion of the district attorney, whenever an offender's conduct is:
(1) Criminal according to a general article of this Code or Section of this Chapter of the Revised Statutes and also according to a special article of this Code or Section of this Chapter of the Revised Statutes; or
(2) Criminal according to an article of the Code or Section of this Chapter of the Revised Statutes and also according to some other provision of the Revised Statutes, some special statute or some constitutional provision.

Error Patent Review
In accordance with La.C.Cr.P. art. 920, we review all appeals for errors patent on the face of the record. In doing so, we have found such an error in sentencing.
During the 2001 Regular Session, the Louisiana Legislature amended the sentencing provisions of La.R.S. 14:98(D), specifically providing that a third offender would face only 30 days of mandatory jail time.[2] The effective date of the amendment, August 15, 2001, was after the date of the offense but before the date defendant pled guilty, May 28, 2002. Under State v. Mayeux, supra, the trial court should have imposed sentence as amended. We therefore are constrained to vacate defendant's sentence and remand the case *193 to the district court for sentencing in conformity with the supreme court's ruling in Mayeux. See State v. Nelson, 36,266 (La. App.2d Cir.08/14/02), 823 So.2d 1112.
We further note that the trial court failed to advise defendant at sentencing of the time period within which to apply for post-conviction relief. By this opinion, defendant is hereby advised that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under La.C.Cr.P. art. 914 or 922.

Conclusion
For the reasons set forth above, defendant's conviction is affirmed. His sentence is hereby vacated and the matter is remanded to the trial court for resentencing under La.R.S. 14:98(D) as amended by the legislature in 2001.
NOTES
[1] "Vessel" is defined by La.R.S. 34:851.2(1) as watercraft and air boats of every description, other than a seaplane on the water, used or capable of being used as a means of transportation on water. Defendant concedes that a jet ski is such a vessel.
[2] The trial court sentenced defendant under the statute as read on the date of his offense which required at least six months to be served without benefit of parole, probation or suspension of sentence.